James Calvin **LEWIS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 61127.

Court of Criminal Appeals of Texas Panel No. 2.

July 18, 1984.

Rehearing Denied Oct. 10, 1984.

David Carlock, Elizabeth Unger Carlyle, Dallas, for appellant.

Henry Wade, Dist. Atty. and T. Michael Sutton, Joe Revesz and Mike Wilson, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and W.C. DAVIS and TEAGUE, JJ.

## OPINION

W.C. DAVIS, Judge.

Appellant was convicted by a jury of indecency with a child, a violation of V.T.C.A. Penal Code, Sec. 21.11(a)(1). The court assessed punishment at ten years' confinement.[1]

Appellant contends that various photographs, testimony, and a magazine were erroneously admitted into evidence. He also alleges that the charge contains error and that improper jury argument was presented.

Paul Roy Mitchell testified that he met appellant at Christmastime in 1976 at a restaurant in Garland. The two men discovered that they had a mutual interest in photography. After chatting on several occasions about photography appellant told Mitchell that he needed a photographer for child pornography and that Mitchell could probably make good money doing that. Appellant also told Mitchell that if he wanted to "... it would be all right at the right times to touch the girls and what have you, to oil their skins down so they would shine good for photographing." Appellant gave Mitchell a magazine containing both photographs of a nude female, who appears to be about twelve years old, depicted in various sexually suggestive poses and a "story" about the trials and tribulations of an adolescent female entering puberty. Appellant told Mitchell that he had photographed the child in the magazine and had received money for arranging the sale of the photographs.

Mitchell contacted the Department of Public Safety and the District Attorney's office, showed them the magazine and told them about appellant. Mitchell was advised to work with appellant and gather whatever evidence he could without violating the law himself.

---

1. At the time appellant was convicted this offense was a third-degree felony. Ten years was the maximum punishment authorized by law at that time.

Mitchell agreed to allow appellant to use Mitchell's studio to photograph people. Mitchell and appellant took photographs, and Mitchell developed the pictures for appellant.

Appellant persuaded the complainant's mother, whom he had met about three years earlier, that the complainant might have a career in modeling and that appellant could get the complainant, then twelve years old, into modeling school. He also told her that he would like to photograph the complainant for use in advertising his sign and lighting business. The mother agreed to allow appellant to photograph the complainant; appellant photographed both mother and complainant, taking "family" pictures initially. Later, when the mother was not present he took pictures of the complainant, some depicting her partially nude, some completely so.

The complainant testified that on each occasion that she was photographed in the nude appellant touched her breasts and genitals. He told her that he did so in order to relax her. The complainant, apparently believing this action was necessary in order to become a successful model, did not object and did not tell her mother. Mitchell testified that appellant told him that "he had gotten some good photographs, the type he wanted from her, but he also used the opportunity there to physically touch her private areas." Mitchell also testified that appellant told him that he touched the complainant's breast and had used his finger to penetrate her genital area. On July 6, 1977, the date alleged in the indictment, appellant once again touched the complainant. However this time he did so in the presence of Mitchell's wife, who was taking the photographs for him. The Mitchells notified police and appellant was charged and arrested.

■ In grounds of error four through twenty-one appellant complains of the admission of photographs, most of which depict the complainant in various stages of undress. Appellant contends that the photographs are irrelevant, prejudicial, too remote in time from the offense alleged, and

cumulative evidence of facts already known. We disagree.

Appellant was indicted for "knowingly and intentionally engag[ing] in sexual contact with ... complainant ... by touching the genitals of the complainant with the intent to arouse and gratify the sexual desire of the Defendant, ..." In order to place the offense in context the ongoing interaction of appellant and the complainant must be shown. As the State points out, "The fact that Appellant had been 'touching' the complainant every time she was photographed in the nude during a month or month and one-half time span prior to the instant offense, was so interconnected with the instant offense as to be inseperable [sic]." We hold that the taking of the photographs of the complainant completely or partially in the nude amounted to one indivisible transaction. *Bush v. State,* 628 S.W.2d 441 (Tex.Cr.App. 1982); *Hoffert v. State,* 623 S.W.2d 141 (Tex.Cr.App. 1981); *Archer v. State,* 607 S.W.2d 539 (Tex.Cr.App. 1980). The photographs are admissible to show the context in which the offense occurred.

In conjunction with showing the context in which the offense occurred, we note also that such photographs are admissible so that a jury can determine whether appellant had the intent to gratify *his* sexual desire when he touched the complainant. The surrounding circumstances must be shown in order to put the offense in perspective. The intent element in this case can only be proved by inferences from the evidence presented. The photographs are relevant in helping the jury to determine whether appellant had the intent to arouse or gratify his sexual desires when he touched the complainant during the photography sessions. *McKenzie v. State,* 617 S.W.2d 211 (Tex.Cr.App. 1981); *Bowles v. State,* 550 S.W.2d 84 (Tex.Cr.App.1977).

■ Furthermore, evidence is admissible if it establishes either the probability that the accused committed the offense or that he paid unnatural attention, or displayed an unnatural attitude toward the victim, or had lascivious intent toward the victim.

*Garcia v. State*, 573 S.W.2d 12 (Tex.Cr. App. 1978); *Johnston v. State*, 418 S.W.2d 522 (Tex.Cr.App. 1967). The photographs, taken over a period of time, beginning with the "family" type pictures of the complainant and her mother and "advancing" to the nude photographs of the complainant alone, help to demonstrate appellant's attitude and intent toward the complainant.

■ Finally, the complainant was free to describe what occurred when appellant photographed her and what the photographs represented. Thus, the general rule applies that a photograph is admissible evidence if a verbal description of what is depicted in the photograph is also admissible. *Harris v. State*, 661 S.W.2d 106 (Tex. Cr.App. 1983).

The photographs were properly admitted. The grounds of error are overruled.

In several grounds of error appellant contends that admission of the magazine containing pictures of a young girl in various stages of undress and testimony pertaining to the magazine was harmful error. As recited previously, appellant gave the magazine to Mitchell and told him he had taken the photographs of the child in the magazine and received money for the sale of the pictures. Appellant objected to the introduction of the magazine and testimony pertaining to the magazine claiming it was irrelevant and prejudicial. Appellant contends that this evidence of an extraneous act of misconduct should not have been admitted.

■ The "test" for admission of extraneous offenses is, as quoted in *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Cr.App. 1983),

"For extraneous transactions constituting offenses shown to have been committed by the accused (note omitted) may become admissible upon a showing by the prosecution both that the transaction is *relevant to a material* issue in the case; and, the relevancy value of the evidence outweighs its inflammatory or prejudicial potential." (citations omitted) (emphasis in original).

■ In a case involving either direct or circumstantial evidence the extraneous transaction must be relevant to a material issue. *Williams*, supra. The State argues that the evidence is admissible as "res gestae" or context of the offense, to show the relationship of the parties, and to show the inducement offered to Mitchell. We do not agree that the evidence concerning the magazine is necessary to show the context of the offense. It is not needed to show Mitchell's involvement with appellant because of the particular offense with which appellant was charged. The magazine was not the inducement to convince Mitchell to help appellant. None of the State's "exceptions" to the general inadmissibility of extraneous transactions show how the magazine is relevant to any material issue in the case in light of the allegation in the indictment. The indictment charges appellant with engaging in sexual contact "... with the intent to arouse and gratify the sexual desire of the *Defendant*." (Emphasis added) The magazine and testimony pertaining to it do little to show that appellant had the intent to gratify his own sexual desires. The relevance of such evidence to any material issue in the case, if any, is minimal. Appellant's past activities in the field of photography and his future plans were not related to any issue in the case. If the State had charged appellant with intent to arouse or gratify the sexual desire of *any* person the evidence pertaining to the magazine might well have been admissible to prove such intent. See V.T.C.A. Penal Code, Secs. 21.01(2) & 21.11(a)(1). We find that the trial court erred in admitting the magazine and testimony pertaining to it.

Before we discuss the harmfulness of this erroneously admitted evidence we will discuss other testimony relating to extraneous transactions which appellant also alleges was improperly admitted.

■ Grounds of error twenty-four through thirty-seven allege error in the admission of Mitchell's testimony concerning various statements that appellant made to Mitchell. The statements can be split into three categories: some of the statements

concern the above-mentioned magazine and for the reasons previously stated should not have been admitted; several other statements relate to things appellant told Mitchell when he asked him to be his photographer for child pornography, and also statements that appellant made to Mitchell to the effect that appellant had touched the complainant. The statements made asking Mitchell to work with him as a photographer for child pornography are admissible in order to show the circumstances of the offense and how the whole scheme was initiated by appellant. The statements about touching the complainant are admissible because they are relevant and probative on the issue of appellant's intent to gratify his own sexual desires. Since evidence of that intent must be inferred from the circumstances, statements, and conduct of appellant the statements are important to the material issue of intent. These statements do not concern extraneous transactions and were properly admitted. Finally, the third group of statements comprise those statements that appellant made to Mitchell concerning past and future sale of such pictures. Because appellant was charged with "intent to arouse and gratify the sexual desire of the Defendant," and not with "intent to arouse or gratify the sexual desire of any person" such statements are not admissible. The statements are not probative of gratification of *appellant's* sexual desires. They would be admissible to the issue of intent to gratify the sexual desires of *any person,* but appellant was not charged with that intent. These statements should not have been admitted.

▆ We turn now to the harmfulness of the admission of the magazine and the statements concerning past and future sales of photographs. The determination whether the introduction of extraneous transactions are harmful must be based on the merits of the individual case. *Ruiz v. State,* 579 S.W.2d 206 (Tex.Cr.App.1979). This court must determine the impact of the improperly admitted evidence on "the minds of an average jury," *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), to determine whether there is a reasonable possibility that the improperly admitted evidence might have contributed to the conviction. *Prior v. State,* 647 S.W.2d 956 (Tex.Cr.App.1983); *Vanderbilt v. State,* 629 S.W.2d 709 (Tex. Cr.App.1981); *Esquivel v. State,* 595 S.W.2d 516 (Tex.Cr.App.1980).

▆ In the instant case the jury was shown more than twenty properly admitted photographs of the complainant in various poses partially or completely nude. Mitchell testified that appellant approached him and initiated the entire photography scheme. Appellant also told Mitchell that not only had he gotten some good photographs of the complainant, but that he had also used the opportunity to physically touch her private areas and penetrate her vagina with his finger.

The complainant testified that appellant had touched her breasts and genitals every time he photographed her when she was nude.

Appellant did not testify. The defense counsel called several witnesses in an attempt to show that Mitchell was not as innocently involved as he said. The only evidence offered to explain appellant's conduct was the complainant's testimony that he told her that he was touching her to relax her. In addition, the court submitted appellant's requested charges that (1) possession of the magazine previously discussed is not an offense under Texas law; and (2) the taking of nude photographs of a child is not an offense under Texas law. The prejudicial impact of the evidence was thus mitigated by the court's charge.

In viewing the evidence as a whole, we cannot say that there is a reasonable possibility that the admission of the magazine and the statements as to sales of photographs might have contributed to the conviction. The impact of the prejudicial evidence is tempered by the substantiality of evidence of appellant's guilt. We conclude "that the 'minds of an average jury' would not have found the State's case *significantly less persuasive ...*" had the evidence now at issue been excluded. See

*Vanderbilt,* supra at 724, and *Schneble v. Florida,* supra. (Emphasis added)

The court assessed punishment in this case. We conclude that the erroneous admission of the extraneous transactions did not contribute to the finding of guilt and was therefore harmless.

■ Appellant also contends that the court erroneously overruled his objection to the prosecutor's argument to the jury:

> Members of the Jury, the law puts a duty on Mr. Revesz [a prosecutor] and I and this is the law, the law says that a prosecutor's job is not merely to convict but to see that justice is done. That is what the law says. Now, that man is under no such duty—

Appellant contends that this argument denied him a fair and impartial trial.

The State responds that the argument was invited by and was a proper reply to earlier argument by defense counsel:

> ... some of you have been on criminal juries before, have you ever been in a case where the prosecutor didn't call a law enforcement agent? They didn't in this case.... They didn't want that good agent out here because the good agent knew that this was a fabrication of Mr. and Mrs. Mitchell, a photography expert, the man that did all the developing, it was Mitchell that did this work, it was he that had the opportunity to assimilate these photographs and do what he wanted to with them and it was he that was trying to put James Lewis in the penitentiary, that is reasonable doubt.... The case against Mr. Mitchell—against Mr. Lewis was that he fondled a child and they have got to prove that evidence first and really under the law that is it, or they might have put the evidence in, these photographs that supposedly were taken on July 5th, did they do that? No, they backed up to January of 1977 when this magazine, which is perfectly legal, and put in all of the photographs inbetween, (sic) you know why? *Because they know their case stinks to high heaven and they don't want to search for the truth here. They*

*want to destroy your brain, to inflame your minds, to make it impossible for you to make a just and right decision and a hard decision—a hard decision, they don't want your thought process to be clear,* that is reasonable doubt, they don't really want anything to do with the Mitchells and the Starks either.... The actions of the District Attorney's office, the Department of Public Safety are reasonable doubt.

The State contends that defense counsel argued to the jury, in no uncertain terms, that the prosecutors were not seeking the truth; that they *knew* "their case stinks;" in essence, that the prosecutors were railroading appellant. The State maintains that the argument was a reply to this attack upon them. The State claims its argument was essentially that they are seeking justice and indeed have a duty under the law to seek justice. Rather, it is defense counsel who is not seeking justice and he has no duty to do so. By stating that defense counsel is under no such duty the prosecutor was answering defense counsel's accusations by saying that since defense counsel does not take the oath perhaps it is he and not the prosecutor who does not want justice done in this case.

Appellant cites *Lewis v. State,* 529 S.W.2d 533 (Tex.Cr.App.1975) as support for his position. In *Lewis* the prosecutor told the jury that he has taken an oath and that "No such oath bears on either one of these attorneys [defense counsel]." The court sustained the defendant's objection to this statement but the prosecutor continued, "All right. I would ask you to believe this: If, assuming this man is guilty, do they [defense counsel] want the truth in here before you?" The court noted that "[t]he effect of the prosecutor's argument was to instruct the jury that only the prosecutors seek to uphold truth and justice, whereas defense counsel have a license to use any means at their command to mislead the jury."

We stated in *Lewis* that the argument was prejudicial in the absence of its being invited by defense counsel. We noted that

the argument made in *Bray v. State,* 478 S.W.2d 89 (Tex.Cr.App.1972) was similarly prejudicial because the argument there was also not invited. We agree with the State that defense counsel's argument in the present case invited the State's reply. When the argument by the prosecutor was invited and was made in response to prior statements of defense counsel no reversible error is shown. *Stone v. State,* 583 S.W.2d 410 (Tex.Cr.App.1979); *Jones v. State,* 520 S.W.2d 755 (Tex.Cr.App.1975); *Hurd v. State,* 513 S.W.2d 936 (Tex.Cr.App.1974). Even if the State's reply that the defense counsel "is under no such duty" went beyond the bounds invited by defense counsel we cannot conclude, in light of the record as a whole, that the one improper line was so prejudicial as to call for reversal. The ground of error is overruled.

Appellant alleges that the trial court erred in overruling his objection to the definitional portion of the charge. The charge defined "sexual contact" in the words of the statute in effect at the time [2]:

██ Appellant objected to this definition because it refers to the "sexual desire of any person" and the indictment charged the "sexual desire of the Defendant."

The application paragraph of the charge tracked the allegations in the indictment. The definitional paragraph tracked the statute defining "sexual contact." That definition was broader than the indictment allegations and application paragraph instructions, which limited the intent to "the Defendant" rather than to "any person" which the statute uses. Appellant claims that the charge authorized a conviction upon a theory not alleged in the indictment and constitutes reversible error. Every case cited by appellant contains "fundamental error" because the *application paragraph* authorized conviction upon a theory not alleged in the indictment. This case does not present "fundamental error" because the application paragraph and the indictment are the same. *Lewis v. State,* 656 S.W.2d 472 (Tex.Cr.App.1983). It is

only a portion of the definitional part of the charge of which appellant complains. Appellant objected to the definition at trial.

██ Although the better charging practice is to limit the definitional paragraphs to the portions of the statute applicable to the allegations in the indictment, it is not reversible error to include entire definitions. *Boston v. State,* 642 S.W.2d 799 (Tex.Cr.App.1982); *Toler v. State,* 546 S.W.2d 290 (Tex.Cr.App.1977). Appellant's ground of error is overruled. The judgment is affirmed.

TEAGUE, Judge, dissenting.

James Calvin Lewis, appellant, was convicted of "knowingly and intentionally engag[ing] in sexual contact with L.S., hereinafter styled [the] complainant, a female child then younger than seventeen (17) years [of age] and not then the spouse of the Defendant, by touching the genitals of the complainant *with the intent to arouse and gratify the sexual desire of the Defendant.*" [Emphasis added]. The record reflects that the female complaining witness was twelve years of age when the offense was allegedly committed.

Because of the reasons the majority gives in its opinion, also see *Williams v. State,* 662 S.W.2d 344 (Tex.Cr.App.1984), I agree that the trial court erred when it admitted into evidence testimony which related to appellant telling another person about his past efforts and future plans to photograph children in the nude for publication and sale. I also agree with the majority's holding that the trial court further erred when it admitted into evidence a magazine which contained nude photographs of what appears to be a female approximately 12 years of age, who was other than the complainant.

Notwithstanding my agreement with the majority on the above, I am unable to agree with its conclusion that there is not a reasonable possibility that the erroneously admitted evidence contributed either to the jury's finding appellant guilty or the trial court's assessment of punishment.

2. V.T.C.A. Penal Code, Sec. 21.01(2)
The term "sexual contact" means any touching of the anus or any part of the genitals of another person or the breast of a female 10 years or older with the intent to arouse or gratify the sexual desire of any person.

Of course, the actual effect on the jury of the prosecutor's demonstrating to it of such opprobious conduct on the part of the appellant will never be known. However, the question is not what actual effect the inadmissible evidence had on the jury, but, instead, is whether there is a reasonable *possibility* that the erroneously admitted evidence contributed to the jury finding appellant guilty. Given the nature of the offense, in conjunction with the inadmissible evidence, I am unable to state that there is not a reasonable possibility that the inadmissible evidence did not contribute to the jury's verdict of guilty.

I also find that the errors carried over to the assessment of punishment by the trial judge. In this regard, I do not believe it is humanly possible to state that there is not a reasonable possibility that the erroneously admitted evidence did not contribute to the trial judge assessing appellant's punishment at seventeen (10) years' confinement in the penitentiary; especially is this so when one examines the record and finds that appellant was not shown to have ever had any type of criminal record.

The errors were not harmless. The judgment of conviction should be reversed and not affirmed.

I dissent.