IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00170-CR

 

Gordon Newell Lewis,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 30th District Court

Wichita County, Texas

Trial Court No. 40,932-A

 



Opinion



 








          A jury
convicted Gordon Newell Lewis of felony driving while intoxicated and assessed
his punishment at six years’ imprisonment.  Lewis contends in his sole issue
that the court abused its discretion by denying his motion for mistrial premised
on the State’s alleged improper argument that the jury should consider the
prior DWI convictions to which he had stipulated as evidence of guilt.  We will
affirm.

          Under Tamez[1]
and its progeny, Lewis stipulated to the two prior DWI convictions alleged in
the indictment.  The parties referred briefly to the stipulation in their
opening statements and the State read the stipulation to the jury just before
it rested.  The court instructed the jury in the charge that it could not
consider the prior convictions as evidence of Lewis’s guilt.

          During
argument, the parties again referred to the prior convictions.  In the State’s
opening argument, the prosecutor reminded the jurors that Lewis had stipulated
to the priors, thus satisfying the State’s burden of proof on that element of
the felony DWI charge.  Defense counsel placed emphasis on the court’s
instruction that the prior convictions could not be considered as evidence of
guilt but spent the majority of his argument focusing on the sufficiency of the
evidence to establish that Lewis was intoxicated on the occasion in question.

          In the State’s
closing argument, the prosecutor spent most of his argument on the issue of
intoxication in response to the argument of defense counsel.  Near the end of
the State’s argument, the following exchange transpired which serves as the
basis for Lewis’s appellate complaint:

State:                And
so anyway, ladies and gentlemen, ultimately it’s in your hands.  He was
impaired.  Think about his actions.  20 miles over the speed limit.  We’re not
talking about five over, we’re talking about 20 miles over.  A child in the
car; he’s been drinking; he’s out with cold beer in his car again.  And then
all the other stuff we’ve talked about.  And he does all of that.  And then
there’s the stipulation in evidence.  This isn’t his first time, it’s his third
time.  He has two prior convictions for DWI.  We’ve proven that as well.

 

Defense:            Your
Honor, I’m going to object to that argument.  The Court has instructed the jury
that they’re only to consider those to which he’s stipulated, not to the—

 

Court:               Sustained.

Defense:            I
would ask the jury be instructed to disregard the State’s argument.

 

Court:               The
jury is instructed to disregard the last statement of the prosecutor.

 

Defense:            Move
for a mistrial, Your Honor.

 

Court:               Denied. 
Go ahead.

 

          Lewis argues
in his sole issue that the court abused its discretion by denying his motion
for mistrial because the reference by the prosecutor to his prior convictions
was an impermissible argument that the jury should find him guilty because of
his prior convictions.

          The State
responds that no error is shown because Lewis’s motion for mistrial was
untimely and the court’s prompt instruction cured any prejudicial effect
arising from the argument.

Preservation

          Rule of
Appellate Procedure 33.1(a)(1) requires “a timely request, objection, or motion”
to preserve a complaint for appellate review.  “There are two main purposes behind requiring a timely, specific
objection: 1) to inform the judge of the basis of the objection and give him
the chance to make a ruling on it, and 2) to give opposing counsel the chance
to remove the objection.”  Garza v. State, 126 S.W.3d 79, 82 (Tex. Crim. App. 2004).  Like an untimely objection, an untimely motion for mistrial will
not preserve a complaint for appellate review.  Young v. State, 137
S.W.3d 65, 70 (Tex. Crim. App. 2004).

          The
preservation requirements of Rule 33.1 are not to be applied in a
hypertechnical manner.

                    The
standards of procedural default, therefore, are not to be implemented by
splitting hairs in the appellate courts.  As regards specificity, all a party
has to do to avoid the forfeiture of a complaint on appeal is to let the trial
judge know what he wants, why he thinks himself entitled to it, and to do so
clearly enough for the judge to understand him at a time when the trial court
is in a proper position to do something about it.

 

Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992); accord
Allman v. State, 164 S.W.3d 717, 720 (Tex. App.—Austin 2005, no pet.); Kirksey
v. State, 132 S.W.3d 49, 54 (Tex. App.—Beaumont 2004, no pet.); Simmons
v. State, 100 S.W.3d 484, 493 (Tex. App.—Texarkana 2003, pet. ref’d).

          There is a
1993 decision from the Fort Worth Court which supports the State’s contention
that Lewis has failed to preserve his complaint for appellate review.  See Parks v. State, 858 S.W.2d 623, 631 (Tex. App.—Fort Worth 1993, pet. ref’d)
(finding objection to argument untimely because it was made eight sentences
after the first objectionable statement was made).  Nevertheless, we decline to
follow Parks because we believe it is distinguishable on its facts and,
more importantly, because we believe it to be inconsistent with a proper
implementation of the policies for preservation as explained by the Court of
Criminal Appeals in Lankston.

          Here, only two
further sentences were uttered by the prosecutor before Lewis objected and then
asked for a mistrial.  Thus, the facts of Lewis’s case are distinguishable from
the facts presented in Parks.

          More
importantly however, the court in Parks appears to have engaged in the
kind of hair-splitting denounced by the Court of Criminal Appeals in Lankston. 
The Court of Criminal Appeals’ more recent decisions addressing preservation
appear to remain faithful to the ideals expressed in Lankston.  See,
e.g., Garza, 126 S.W.3d at 84-85 (appellate complaint preserved even though
trial objection not raised “at the earliest opportunity”).  Thus, we decline to
take the hypertechnical approach advocated by the State in determining whether
Lewis timely preserved his complaint.

          Lewis urged
his objection and motion for mistrial only moments after the complained-of
argument was made and “at a time when the trial court [wa]s in a proper position
to do something about it.”  See Lankston, 827 S.W.2d at 909; Kirksey,
132 S.W.3d at 54; see also Garza, 126 S.W.3d at 82.  Accordingly, we
hold that he adequately preserved his complaint for appellate review.

Denial of Mistrial

          The denial of
a motion for mistrial, appropriate for “highly prejudicial and incurable
errors,” is reviewed under an abuse of discretion standard.  See Simpson v.
State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (quoting Wood v. State,
18 S.W.3d 642, 648 (Tex. Crim. App. 2000)); Perez v. State, No.
10-05-00060-CR, 2005 Tex. App. LEXIS 454, at *2 (Tex. App.—Waco Jan. 18, 2006,
no pet. h.). 

          [T]he
question of whether a mistrial should have been granted involves most, if not
all, of the same considerations that attend a harm analysis.  A mistrial is the
trial court’s remedy for improper conduct that is “so prejudicial that
expenditure of further time and expense would be wasteful and futile.”  In
effect, the trial court conducts an appellate function: determining whether
improper conduct is so harmful that the case must be redone.  Of course, the
harm analysis is conducted in light of the trial court’s curative instruction. 
Only in extreme circumstances, where the prejudice is incurable, will a
mistrial be required.

 

Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (footnotes omitted).

          Thus, the
appropriate test for evaluating whether the trial court abused its discretion
in overruling a motion for mistrial is a tailored version of the test
originally set out in Mosley v. State, 983 S.W.2d 249, 259-60 (Tex.
Crim. App. 1998), a harm analysis case.  See Hawkins, 135 S.W.3d
at 77; Perez, 2005 Tex. App. LEXIS 454, at *3.  The Mosley
factors that we consider in determining whether the trial court abused its
discretion in denying a mistrial are: (1) the severity of the misconduct (the
magnitude of the prejudicial effect); (2) measures adopted to cure the
misconduct (the efficacy of any cautionary instruction by the judge); and (3)
the certainty of conviction absent the misconduct.  Mosley, 983 S.W.2d
at 259; Perez, 2005 Tex. App. LEXIS 454, at *4.

          When a Tamez stipulation has been made,
the stipulation is admissible in evidence and is “the legitimate subject of
voir dire, opening statements, and closing arguments.”  Hollen v.
State, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003) (emphasis added). 
However, the State may not argue that the jury should find the defendant guilty
of the present DWI charge because of the prior convictions to which he has
stipulated.  See Melton v. State, 713 S.W.2d 107, 114 (Tex. Crim. App.
1986) (impermissible to argue that a defendant should be found guilty because
of extraneous offenses); Sanchez v. State, 591 S.W.2d 500, 502 (Tex.
Crim. App. [Panel Op.] 1979) (“the State may not argue to the jury that the
prior convictions are evidence of the defendant’s guilt”); Miranda v. State,
813 S.W.2d 724, 741 (Tex. App.—San Antonio 1991, pet. ref’d); see also
Hollen, 117 S.W.3d at 803 (Holcomb, J., concurring) (fact that stipulation
may be mentioned in closing argument “does not mean the State can refer to the
proof in an inappropriate context, such as suggesting that the jury should find
the defendant guilty of the current charge of DWI because he was already found
twice guilty of a similar offense, or that the jury should take the prior
convictions into account when considering whether there is a reasonable doubt
the defendant was intoxicated on the date in question while operating a motor
vehicle”).

          When we
consider issues relating to allegedly improper jury argument, the argument must
be examined in light of the entire record and not in isolation.  See Swarb
v. State, 125 S.W.3d 672, 685 (Tex. App.—Houston [1st Dist.] 2003, pet.
dism’d); Miranda, 813 S.W.2d at 740; Crossman v. State, 797
S.W.2d 321, 325-26 (Tex. App.—Corpus Christi 1990, no pet.); see also
Hawkins, 135 S.W.3d at 80.

          Here, the primary
focus of the State’s closing argument was on the issue of intoxication.  Near
the conclusion of the argument, the prosecutor summarized the evidence which he
contended was probative of intoxication, then added, “And then there’s the
stipulation in evidence.  This isn’t his first time, it’s his third time.” 
Lewis contends that this argument impermissibly urged the jury to find him
guilty because of his two prior convictions.

          However, the
State looks to the remainder of the argument—“He has two prior convictions for
DWI.  We’ve proven that as well.”—and argues that, in context, the prosecutor
was concluding the argument by reminding the jurors that the “prior convictions
element” of the felony DWI had been established by the stipulation.  Although
this is a close case, we agree with the State’s assertion.

          When the
complained-of argument is read in context, we cannot say that the argument was a
flagrant effort on the part of the prosecutor to urge the jury to convict Lewis
because of his prior convictions rather than because of the evidence of
intoxication offered at trial.  Cf. Soto v. State, 810 S.W.2d 861, 864 (Tex. App.—Fort Worth 1991, pet. ref’d) (argument not improper because “[t]he prosecutor did
not directly argue to the jury that Soto was a drug dealer”); Crossman,
797 S.W.2d at 326 (“A complete and careful reading of the State’s closing
argument does not indicate that the State argued outside the limitations in the
charge that the extraneous offenses were only to be considered to show the lust
of appellant for L.”).

          Ordinarily, a
prompt instruction to disregard will cure the prejudicial effect of allegedly
improper prosecutorial argument.  See Wesbrook v. State, 29 S.W.3d 103,
115 (Tex. Crim. App. 2000); Harris v. State, 122 S.W.3d 871, 886-87 (Tex. App.—Fort Worth 2003, pet. ref’d); Gonzalez v. State, 115 S.W.3d 278, 284 (Tex. App.—Corpus Christi 2003, pet. ref’d). 
In a similar context, it has been held that a prompt instruction to disregard
can cure the prejudicial effect arising from the improper admission of evidence
of extraneous offenses.  See Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); Hackett v. State, 160 S.W.3d 588, 592 (Tex. App.—Waco 2005,
pet. ref’d).  Thus, a prompt instruction to disregard will ordinarily cure the
prejudicial effect of prosecutorial argument which makes an improper reference
to an extraneous offense.  See Lemmons v. State, 75 S.W.3d 513, 527-28
(Tex. App.—San Antonio 2002, pet. ref’d); Soto, 810 S.W.2d at 864.

          Here, the
trial court promptly and clearly instructed the jury to disregard the
complained-of argument.  We presume the jury followed this instruction.  See
Wesbrook, 29 S.W.3d at 116; Perez,
2005 Tex. App. LEXIS 454, at *6; Drake
v. State, 123 S.W.3d 596, 604 (Tex. App.—Houston [14th Dist.] 2003, pet.
ref’d); West v. State, 121 S.W.3d 95, 107 (Tex. App.—Fort Worth 2003,
pet. ref’d).

          Finally, we
examine the certainty of conviction absent the misconduct.  The only disputed
issue at trial was whether Lewis was intoxicated on the date in question.  After
reviewing the record, we cannot characterize the evidence of intoxication as
overwhelming.  In fact the arresting officer agreed that Lewis was not “falling
down drunk.”  Nevertheless, there is ample evidence in the record from which it
could be determined that Lewis was intoxicated.

          Wichita Falls
Police Officer Henry Saenz decided to stop Lewis’s convertible just after
midnight when he saw it traveling in the opposite direction at a high rate of
speed.  Saenz turned around to follow.  Saenz paced Lewis’s car and determined
it was traveling about 60 miles per hour in a location where the posted speed
limit was 40.  Lewis was driving at this rate of speed with the top down and
his two-year old son in a carseat, on a late-November night which Saenz characterized
as “cool.”

          Saenz found Lewis
to have bloodshot eyes and a strong odor of an alcoholic beverage on his
breath.  The State offered in evidence an in-car video recording made by a
camera in a back-up officer’s patrol car.  This recording began as Saenz had
Lewis walk to an area beside the road to perform field sobriety tests.  Saenz
asked Lewis to perform the walk-and-turn test, wherein Lewis was to walk along
an imaginary line touching his heel to his toes with each step.  Lewis had some
difficulty standing in the starting position (heel-to-toe) as Saenz gave the
instructions.  When he began the test, he stepped off the imaginary line on his
initial step.  Saenz also testified that Lewis failed to walk in a heel-toe
fashion as directed.

          After the walk-and-turn
test, Saenz asked Lewis to submit a breath specimen for a portable breath
testing instrument.  A back-up officer, Charles Mauck, performed this test.  He
directed Lewis to blow into a small tube in a manner similar to inflating a
balloon.  Lewis had difficulty providing an adequate breath specimen.  Mauck decided
that Lewis had something in his mouth because he found a residue in the
specimen tube.  He directed Lewis to clear his mouth.  However, Lewis was
unable to provide an adequate specimen.  Mauck attributed this to a lack of
cooperation on Lewis’s part.

          A video
recording was made at the Wichita County Jail as well.  Here, Lewis did not
appear to sway as he stood in the intoxilyzer room.  Without prompting, Lewis
stood, stated his name, and complained that the officers had not read his
rights to him.  He stated that he had already taken three breath tests which
demonstrated that he was not intoxicated and he walked the line at the jail to
demonstrate his sobriety.

          The
intoxilyzer operator, Officer Mason Wiese, then read Lewis’s rights and the
required statutory warnings to him.  Lewis responded that he had already taken
a breath test and would not submit to another.  He also said that he would not
perform any sobriety tests he had already done.  Wiese conducted the horizontal
gaze nystagmus test and found six of a possible six clues indicating
intoxication.  Wiese then had Lewis perform the one-leg-stand test, wherein
Lewis was to stand with one foot about six inches off the ground and count to
twenty.  Lewis swayed slightly, but he was able to perform this test with each
foot.  Wiese critiqued his performance by saying that he did not hold the
extended foot as high as he was supposed to.  It is difficult to determine this
aspect of Lewis’s compliance from the video.

          Although the
evidence of intoxication may not be characterized as overwhelming, the record
does contain ample evidence from which the jury could determine that Lewis was
intoxicated.  The fact that Lewis was driving his two-year-old son in his
convertible at a high rate of speed with the top down on a “cool” night is
somewhat indicative of a loss of normal mental faculties.  Lewis’s performance
on the walk-and-turn test and the one-leg-stand test provides some indication
of impairment.  The results of the horizontal gaze nystagmus test are
indicative of intoxication.  The odor of an alcoholic beverage on Lewis’s
breath and his bloodshot eyes are indicators of intoxication.  And finally,
Lewis’s refusal to provide a breath specimen for the intoxilyzer at the county
jail may be considered as evidence of intoxication.  See Tex. Transp. Code Ann. § 724.061 (Vernon 1999); Smith v. State, 8 S.W.3d 450, 451 (Tex. App.—Waco 1999, no pet.).

Returning
to the Mosley factors, the complained-of argument does not appear to
have been made in a flagrant attempt to prejudice the jury, we presume that the
jury complied with the court’s prompt instruction to disregard, and it is reasonably certain that the jury would
have convicted Lewis regardless of the challenged argument in light of the
evidence presented.  Therefore, we cannot say that the court abused its
discretion by denying Lewis’s motion for mistrial.  Accordingly, we overrule
Lewis’s sole issue and affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring)

Affirmed

Opinion delivered and
filed March 22, 2006

Publish

[CR25]

 









[1]
          Tamez v. State, 11 S.W.3d
198 (Tex. Crim. App. 2000).